UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-121-TBR

POLYONE CORPORATION,                                                    PLAINTIFF

v.

WESTLAKE VINYLS, INC.,                                                  DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff PolyOne Corporation's Motion to Vacate Final Arbitration Award. [DN 1]. Defendant Westlake Vinyls, Inc. responded, [DN 35], and PolyOne replied, [DN 39]. Additionally, Westlake filed a Motion to Confirm Final Arbitration Award. [DN 13]. PolyOne responded, [DN 34], and Westlake replied, [DN 37]. This matter is ripe for adjudication. For the reasons stated herein, PolyOne's Motion to Vacate, [DN 1], is DENIED and Westlake's Motion to Confirm, [DN 13], is GRANTED.

### BACKGROUND

PolyOne and Westlake have long disputed the allocation of investigation and remediation costs incurred due to environmental contamination at an industrial complex in Calvert City, Kentucky (the "Site"). Further details concerning the relationship between these parties can be found in this Court's Memorandum Opinion in *PolyOne Corporation v. Westlake Vinyls, Inc.*, No. 5:17-CV-157-TBR, 2018 WL 2437241 (W.D. Ky. May 30, 2018). The current dispute arises from the 2007 Settlement Agreement, in which the parties agreed to resolve litigation related to environmental liabilities arising on or before July 31, 2007, and to arbitrate the allocation of certain environmental costs ("Allocable Costs") arising after that date. [*See* DN 6-1].

On May 19, 2017, PolyOne filed a Demand for Arbitration pursuant to the 2007 Settlement Agreement. [DN 6 at 226]. The parties spent the next two years engaged in arbitration

1

before a panel of three experienced arbitrators. [DN 13 at 372]. The arbitration hearing itself "covered 36 trial days over more than four months, and included nearly two hundred hours of testimony, approximately 7,000 exhibits, 36 live witnesses and 16 witnesses by deposition." *Id.* at 373. The parties filed extensive post-hearing briefs and the Panel requested additional time to prepare its award in light of the complexity of the case. *Id.* On May 22, 2019, the Panel issued its Final Award unanimously assigning 100% of the Allocable Costs to PolyOne. *Id.* at 375. On August 20, 2019, PolyOne filed the Motion to Vacate Final Arbitration Award currently before the Court. [DN 1].

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, expresses the federal policy favoring enforcement of arbitration awards. *See generally Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). To encourage parties to agree to arbitration, the FAA ensures that "arbitration awards are both fair and final." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 475 (6th Cir. 2006). The Act promotes finality "by substantially limiting the occasions for judicial review," *id.*, and expressing a "presumption that arbitration awards will be confirmed." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998). Under the FAA, courts may vacate an arbitration award under the four express statutory grounds in § 10(a)(1)-(4). And, though accompanied by some uncertainty, *see Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), the Sixth Circuit also recognizes that judicial intervention may be appropriate where arbitrators act with "manifest disregard for the law," *see, e.g., Grain v. Trinity Health*, 551 F.3d 374, 380 (6th Cir. 2008), *cert. denied*, 558 U.S. 820, 130 S.Ct. 96, 175 L.Ed.2d

30 (2009); *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415 (6th Cir. 2008), *cert. denied*, 558 U.S. 819, 130 S.Ct. 81, 175 L.Ed.2d 28 (2009).

In light of the policies underlying the FAA, a party seeking vacatur of an arbitration award "must clear a high hurdle." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1767, 176 L.Ed.2d 605 (2010). "When courts are called on to review an arbitrator's decision, the review is very narrow; [it is] one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008) (alteration in original) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)); *see also NCR Corp. v. Sac–Co., Inc.*, 43 F.3d 1076, 1079 (6th Cir. 1995) (noting that a court's review of an arbitration award "is generally extremely narrow"). Thus, as the U.S. Supreme Court has long held, "the courts play only a limited role when asked to review the decision of an arbitrator," and are not authorized to reconsider the merits of an award. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Stated another way, even "the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce an award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (quoting *Misco,* 484 U.S. at 39, 108 S.Ct. 364). Accordingly, as the Sixth Circuit has succinctly instructed, "[C]ourts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay*, 442 F.3d at 476 (alteration in original) (emphasis omitted) (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. 364). In essence, "if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).

# DISCUSSION

The issue before the Court is whether to confirm or vacate the final arbitration award issued by the Panel on May 22, 2019. The Sixth Circuit interprets §§ 9 and 10 of the FAA as making clear that confirmation or vacatur is to be a summary proceeding, "and [that] the court *must* confirm the award where it is not vacated, modified or corrected." *Wachovia Securities, Inc. v. Gangale*, 125 F. App'x 671, 676 (6th Cir. 2005). Under the FAA, an arbitration award may be vacated on any of the following statutory grounds:

1. where the award was procured by corruption, fraud, or undue means;

2. where there was evident partiality or corruption in the arbitrators, or either of them;

3. where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

4. where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Supreme Court has expressly held that § 10 "provide[s] the FAA's exclusive grounds for expedited vacatur." *Hall*, 552 U.S. at 584. However, even in light of *Hall*, the Sixth Circuit continues to recognize that an award may also be vacated where found to be in "manifest disregard of the law." *E.g.*, *Grain*, 551 F.3d at 380; *Coffee Beanery,* 300 F. App'x at 415.

Here, PolyOne argues that the Final Award should be vacated for three reasons: (1) the arbitrators exceeded their powers by imposing the burden of proof on PolyOne in violation of the 2007 Settlement Agreement; (2) the arbitrators manifestly disregarded the legal principle that rejects incremental cost allocation; and (3) the award violates the well-established public policy

4

of requiring polluters to pay for the environmental harm they cause.[1] [DN 1 at 2–3]. The Court will address each argument in turn.

1. **Imposing the Burden of Proof on PolyOne**

First, PolyOne claims "the arbitrators exceeded their power" by imposing a burden on PolyOne that was not permitted by the parties' 2007 Settlement Agreement. [DN 6 at 238]. In this Circuit, "[t]he burden of proving that the arbitrators exceeded their authority is great." *Solvay*, 442 F.3d at 476 (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 845 (6th Cir. 2003)). "[C]ourts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed." *Id.* (quoting *Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir. 1997)). Because "[a]rbitration is a matter of contract ... [t]he terms of the [arbitration] contract define the powers of the arbitrator, and 'as long as the arbitrator is even arguably construing or applying the [arbitration] contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision.'" *Id.* at 475–76 (quoting *Misco*, 484 U.S. at 38). Further, "courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious *legal* or *factual* error." *Id.* at 476 (alteration omitted) (second emphasis added) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).

---

[1] In its Motion to Vacate, PolyOne argued that the Final Award should be vacated because the 2007 Settlement Agreement is invalid and unenforceable. [DN 6 at 228]. However, after PolyOne submitted its motion, the Sixth Circuit found that PolyOne waived its right to challenge the 2007 Settlement Agreement in this proceeding. *See PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692 (6th Cir. 2019). PolyOne appears to concede that it is now precluded from challenging the Final Award on the basis that the underlying agreement is invalid given that it has not presented this argument since the Sixth Circuit ruled on the issue.

Following the Supreme Court's guidance in *United Steelworkers*, the Sixth Circuit has instructed, "if the arbitrator's award draws its essence from the . . . agreement, and is not merely the arbitrator's own brand of industrial justice, the award is legitimate." *Solvay*, 442 F.3d at 476 (internal quotation marks omitted) (quoting *Beacon Journal Publ'g*, 114 F.3d at 599; *United Steelworkers*, 363 U.S. at 597). An award fails to "draw its essence from the agreement" when:

> (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.

*Id.* (quoting *Beacon Journal Publ'g*, 114 F.3d at 600).[2] Here, PolyOne contends that "[t]he 2007 Settlement Agreement under which the Arbitration proceeded provides unambiguously that each party in the Arbitration bears an equal burden to prove the allocation of Allocable Costs it seeks." [DN 6 at 238]. Thus, the Court will analyze whether the Final Award "conflicts with express terms" of the 2007 Settlement Agreement.

PolyOne argues that the equal burden of proof is summarized in Exhibit C, Section 1: "Initiation of Arbitration" of the 2007 Settlement Agreement:

> 1.1 The initiating Party (the "Claimant") shall serve on the other Party (the "Respondent") written notice of its intent to initiate Arbitration (the "Demand"). **The Demand shall contain a statement setting forth:**
>
> > (a) The amount if, agree upon, of the Allocable Costs at issue in the Arbitration;
> >
> > (b) If the amount of Allocable Costs at issue is not agreed upon, the Claimant's proposed amount of the Allocable Costs to be at issue in the Arbitration and a brief statement in support of that proposed amount;

---

[2] Before engaging in the "draws its essence" analysis, "courts must distinguish between contract provisions that concern 'arbitrability'—*i.e.,* what sorts of disputes are proper subjects for arbitration—and those that do not." *Solvay*, 442 at 477. Here, the parties do not "challenge the arbitrator's authority to decide" which party bore the burden of proof. *Id.* (quoting *Davis v. Chevy Chase Fin., Ltd.,* 667 F.2d 160, 167 (D.C. Cir. 1981)). Thus, the Court will proceed with the "draws its essence" analysis.

> **(c) The amount of Allocable Costs that Claimant contends should be allocated to each Party and a brief statement in support of that allocation;**
>
> . . . .
>
> 1.4 The Respondent shall file an answering statement to the Demand (the "Response"). If the amount of Allocable Costs at issue is not agreed upon, the Response shall include the Respondent's proposed amount of the Allocable Costs to be at issue in the Arbitration and a brief statement in support of that proposed amount. **The Response shall include the amount of Allocable Costs that Respondent contends should be allocated to each Party and a brief statement in support of that allocation.** The Response may address any allegations in the Demand; provided however, that allegations of the Claimant not addressed by Respondent are deemed to be denied.

[DN 6-1 at 268–69] (emphasis in PolyOne's Motion to Vacate). PolyOne attempts to connect this language to the "reciprocal indemnity obligations" found in the parties' 1900 and 1997 Agreements[3] and Section 3.1 of the 2007 Settlement Agreement[4] by arguing:

> Under the 2007 Settlement Agreement, PolyOne assumed "initial responsibility" to pay 100% of Allocable Costs as defined by the Agreement, including (1) costs incurred directly by PolyOne and (2) costs "that Westlake contends are PolyOne's responsibility" under applicable agreements. The "initial responsibility" would continue until an allocation was determined in an arbitration or court proceeding. Critically, the 2007 Settlement Agreement "does not modify" the parties' underlying indemnity agreements and is not itself an allocation of liability. Thus, the "initial responsibility" provision in the 2007 Settlement Agreement, which requires PolyOne to take initial responsibility for costs that Westlake merely contends it is entitled to under the parties' indemnity agreements, cannot be read to modify Westlake's burden during an arbitration proceeding to <u>prove</u> it is entitled to indemnification for such costs.

[DN 6 at 239–40].

---

[3] The Final Award describes the parties' reciprocal indemnity obligations as follows: "Generally, ... PolyOne (standing in Goodrich's shoes) is required to indemnify and hold Westlake harmless from all costs and expenses that arise out of or relate to Goodrich's contamination at the Site and Goodrich's Retained Liabilities. Conversely, Westlake is required to indemnify and hold Goodrich harmless (with PolyOne standing in Goodrich's shoes) from all costs and expenses that arise out of or relate to Westlake's contamination." [DN 6-2 at 313 (quoting WL PH Brief, p. 240)].

[4] Section 3.1 "Initial Responsibility" states: "PolyOne will pay 100% of the Allocable Costs as defined in Section 3.3 incurred in connection with the RCRA Permit, PCAP, and investigation and/or remediation activities associated with the Calvert City Site after July 31, 2007, including, without limitation, payment of the invoices submitted by Westlake that are referenced in Section 3.2, PolyOne's responsibility to pay 100% of the Allocable Costs shall continue unless and until that percentage is modified pursuant to the procedures described in Section 4, Section 5, or Section 6. PolyOne's agreement to pay 100% of the Allocable Costs shall not be deemed to constitute an admission by PolyOne of any liability for any portion of the Allocable Costs." [DN 6-1 at 252].

The Court is unpersuaded by this argument. In the context of the 2007 Settlement Agreement, Section 1 merely establishes the procedure by which PolyOne or Westlake may initiate arbitration. It requires the initiating party to state the amount of Allocable Costs it contends should be assigned to each party, including a brief statement in support of that allocation, presumably to notify the other party what issues will be arbitrated. Section 1 does not "expressly impose an equal burden on both parties to support their proposed allocations of Allocable Costs *in an arbitration*." [DN 39 at 772] (emphasis added). Nor does the plain meaning of the language change in light of the parties' reciprocal indemnity obligations and PolyOne's initial responsibility to pay the Allocable Costs. Thus, the Panel did not exceed its authority by contradicting the express terms of the 2007 Settlement Agreement.

Furthermore, the 2007 Settlement Agreement appears silent as to which party should bear the burden of proof at arbitration. Thus, the Court is prohibited from engaging in contract interpretation on this matter. *See Beacon Journal Publ'g Co*, 114 F.3d at 599 ("[C]ourts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed.").[5] Instead, if the Court "can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Solvay*, 442 F.3d at 483 (alteration in original) (quoting *Jaros*, 70 F.3d at 421).

Here, the Panel determined that PolyOne had the burden of proof at arbitration for two reasons. [*See* DN 6-2 at 313–16]. First, the Panel discussed this Court's September 27, 2007 Memorandum Opinion which established that "Goodrich retain[ed] the burden of establishing Westlake's indemnity obligations and the fact and amount of Goodrich's losses due to any

---

[5] This principle is also mentioned in the case relied on by PolyOne: *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 525 (6th Cir. 2012). Although this case in not binding in this matter, given that it applies the Michigan Arbitration Act rather than the FAA, the Sixth Circuit acknowledged that if an arbitration agreement is silent on an issue, the district court is prohibited from "engaging in contract interpretation, which is a duty reserved for the arbitrator." *Id.*

contamination by Westlake." *Id.* at 314. The Panel reasoned the Memorandum Opinion was "*at least* persuasive authority for the proposition that PolyOne has the burden on precisely the issues described by the Court, *i.e.*, 'Westlake's indemnity obligations, and the fact and amount of Goodrich's losses due to Westlake's contamination.'" *Id.* at 315–16. Moreover, the Panel "independently determined that PolyOne had the burden or proof" given that PolyOne "has looked and acted like a claimant or plaintiff bearing the burden of proof throughout" the arbitration proceeding. *Id.* at 316. Specifically, PolyOne filed the Demand initiating the proceeding, put on its evidence first, and insisted upon presenting rebuttal evidence. *Id.* Additionally, PolyOne sought recovery of money from Westlake pursuant to the indemnity clauses running from Westlake to Goodrich. *Id.* Thus, the Panel concluded, "all of these factors weigh heavily in favor of the conclusion that PolyOne has the burden of proof." *Id.*

Upon review, the Court concludes that this is a legally plausible argument in support of imposing the burden of proof on PolyOne. *See Zebrowski & Assocs., Inc. v. City of Indianapolis*, 457 N.E.2d 259, 261 (Ind. Ct. App. 1983) ("[T]he burden of proof is on the indemnitee, . . . to prove all the material elements of its cause of action by a preponderance of the evidence."); *Acuity Mut. Ins. Co. v. T & R Pavement Markings, Inc.*, No. 1:10-CV-00239-SEB, 2011 WL 2472246, at *4 (S.D. Ind. June 21, 2011) ("It is the indemnitee's burden to prove entitlement to indemnification under the terms of an existing contract"); *In re Purdy*, 870 F.3d 436, 446–47 (6th Cir. 2017) ("[S]ince both CFB and Sunshine are making affirmative claims to the proceeds of the cattle, both parties bear the burden of proof on their claims.").[6] Therefore, the Final Award must be confirmed.

---

[6] The Court also rejects PolyOne's assertion that "not only did the Panel exceed its powers in imposing the burden of proof solely on PolyOne, it exacerbated that error by admittedly making that burden an impossible one for PolyOne to meet." [DN 6 at 241]. PolyOne argues that "because of the indivisible nature of the groundwater contamination at the Site, the Panel understood that *neither* party could

9

## 2. Manifest Disregard for the Law

Second, PolyOne contends that the Final Award should be vacated because it was issued in manifest disregard for the law. [DN 6 at 242]. To constitute a manifest disregard for the law, "[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established precedent.'" *Coffee Beanery,* 300 F. App'x at 418 (quoting *Jaros*, 70 F.3d at 421). An arbitrator acts with manifest disregard for the law where "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Id.* (quoting *Jaros*, 70 F.3d at 421).

Here, PolyOne claims the applicable legal principle is the prohibition against using incremental cost analysis in allocating remediation costs. [DN 6 at 244]. Under this standard, Westlake could be held liable for contamination even if the contamination did not incrementally increase the remediation costs. *Id.* Failure to adhere to this principle would allow Westlake to contaminate at will without bearing the burden of remediation costs. *Id.* While PolyOne believes the Panel "superficially acknowledged" the prohibition against incremental cost analysis, it claims the arbitrators "repeatedly ignored it to absolve Westlake from liability for remediating environmental contamination that the Panel found Westlake had caused." *Id.* at 243.

In response, Westlake argues that PolyOne's argument is "baseless" and notes that the "Panel found a complete lack of evidence of the fact or amount of Westlake contamination and the fact or amount of any costs attributable to that contamination." [DN 35 at 744]. Thus, the

---

demonstrate what specific portion of the groundwater was contaminated by which party, and what specific costs were caused by which groundwater contamination." *Id.* at 242. PolyOne's argument is without merit. The Panel did not place an impossible burden on PolyOne, nor did it make any statement to that effect. The Panel acknowledged that the PCAP system indiscriminately removes contamination from the groundwater regardless of who placed it there. [DN 6-2 at 303]. Moreover, it noted that PolyOne could recover the costs associated with running the PCAP system, if it could establish "both the fact and amount of cost caused by Westlake contamination." *Id.* at 303–04. However, the Panel concluded: "That evidence is missing here." *Id.* at 304. Thus, PolyOne's burden of proof was not impossible to meet—it simply failed to do so.

"Panel did not disregard any legal principle prohibiting a party from contaminating at will. Instead, the Panel simply found that PolyOne failed to prove that Westlake had actually contributed in any material way to the contamination at the Site, or that Westlake's activities were the cause of any of the costs at issue." *Id.* at 745.

The Court agrees. The Panel noted: (1) "Westlake is liable for indemnity for remediation costs for contamination caused by Westlake."; and (2) "Westlake can be liable for certain contamination even if Westlake contamination did not incrementally increase the cost" of remediation. [DN 6-2 at 322]. However, based on the evidence presented, the Panel concluded that PolyOne failed to establish "(1) the amount of contamination caused by Westlake, (2) the cause of any cost of investigation or remediation, or (3) the fact or amount of any cost caused by any such contamination, investigation, or remediation allegedly caused by Westlake." *Id.* at 292. Thus, the Panel's decision to impose 100% of the Allocable Cost on PolyOne was based on the evidence presented during arbitration, not a manifest disregard for the law. Therefore, the Final Award shall not be vacated on this basis.

3. **Violation of Public Policy**

Similarly, PolyOne contends the Final Award should be vacated because it violates public policy. [DN 6 at 245]. It argues that "[w]hen an arbitrator's interpretation of a contract violates 'some explicit public policy' that is 'well defined and dominant' that interpretation should not be enforced by the Court." *Id.* (citing *Misco*, 484 U.S. at 43). Here, PolyOne claims there is a well-established public policy of protecting environmentally sensitive waterways from environmental contamination, as well as a policy requiring polluters to pay for the environmental harm they cause. *Id.* at 246. Despite finding that Westlake contributed to environmental contamination at the Site, the Panel assigned 0% of the Allocable Costs to the company. *Id.* at

247. Thus, PolyOne asserts, the Final Award "essentially issues Westlake a blank check to continue polluting, regardless of the volume or magnitude of the harm to the surrounding environment . . . ." *Id.*

In response, Westlake rejects PolyOne's assertion that it "pollutes with impunity" and notes the Panel's finding that Westlake remedies its environmental releases as they occur, as required by environmental laws. [DN 35 at 745]. Moreover, Westlake argues that the Final Award was based on PolyOne's failure to provide evidence of the fact or amount of unremediated Westlake contamination or resulting costs incurred by PolyOne. *Id.* at 745–46. It was this finding, not a disregard for public policy, that led the Panel to assign 100% of the Allocable Costs to PolyOne. *Id.*

Again, the Court agrees with Westlake. The Final Award specifically notes that "the relevant indemnity agreements provide that Westlake is indeed responsible for PolyOne's out-of-pocket" costs to remediate contamination caused by Westlake. [DN 6-2 at 302]. However, "[t]he evidence did not establish the amount of contamination caused by [Westlake's] alleged poor remediation, or the fact or amount of any cost for remediation of any such contamination." *Id.* Thus, 100% of the Allocable Costs were assigned to PolyOne. The Final Award was well-reasoned based on the evidence presented to the Panel. It does not disregard public policy or permit "Westlake to pollute with impunity." [DN 6 at 247]. It merely requires PolyOne prove the fact and amount of costs to remediate Westlake's contamination, which it failed to do. Accordingly, the Final Award shall not be vacated due to violation of public policy.

## CONCLUSION

For the reasons stated herein, the Court finds there is no basis to vacate the Final Award. In the Sixth Circuit, "the court *must* confirm the award where it is not vacated, modified or corrected." *Gangale*, 125 F. App'x at 676. Thus, the Final Award is confirmed.

**IT IS HEREBY ORDERED**: PolyOne's Motion to Vacate, [DN 1], is **DENIED** and Westlake's Motion to Confirm, [DN 13], is **GRANTED**. This case is no longer on the active docket and is now closed.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

February 10, 2020

CC: Attorneys of Record